UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ALBERT SPEISMAN, | ) | No. 11 B 40604 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| FIRST AMERICAN TITLE INSURANCE CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 A 2682 |
| | ) | |
| ALBERT SPEISMAN, | ) | |
| | ) | |
| Defendant. | ) | Judge Goldgar |

## MEMORANDUM OPINION

Before the court for ruling is the motion of debtor and defendant Albert Speisman ("Speisman") pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 12(b)(6) and 9(b) (made applicable by Fed. R. Bankr. P. 7012(b), 7009), to dismiss the amended adversary complaint of First American Title Insurance Company ("First American"). In the amended complaint, First American alleges that it was required to make payments under a title insurance policy Speisman procured through false representations. Speisman's main ground for dismissal is that the amended complaint fails to allege he personally received any "money, property, services, or an extension, renewal, or refinancing of credit" as a result of his fraud. 11 U.S.C. § 523(a)(2)(A). As discussed below, however, no such allegation is necessary. The motion will therefore be denied.

## 1. Facts

On a motion to dismiss under Rule 12(b)(6), the court takes as true all well-pleaded allegations in the complaint and draws all reasonable inferences in favor of the non-movant. *Geinosky v. City of Chicago*, 675 F.3d 743, 746 (7th Cir. 2012). Documents attached to a complaint are considered part of the complaint. Fed. R. Civ. P. 10(c) (made applicable by Fed. R. Bankr. P. 7010); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (citations omitted).

The complaint alleges the following rather sparse facts. Speisman owns a residence in Highland Park, Illinois. (Am. Compl. ¶¶ 2-4). Title to the property is apparently held in an Illinois land trust, and Speisman apparently owns the beneficial interest in the land trust. (*See id.* Ex. 1 at 3, Ex. 2 at 1).

In early 2006, Speisman obtained a loan from Bank of America (apparently a refinancing of an earlier loan (*see id.* Ex. 1 at 1)) secured by a mortgage on the Highland Park property. (*See id.* ¶ 4).[1] In connection with the closing, on April 24, 2006, Speisman signed on behalf of the land trust a "Mortgagor Authorization and Agreement Statement." (*Id.*). In the Statement, Speisman represented that "[n]o contracts for the furnishing of any labor or material to the land or the improvements thereon, and no security agreements or leases in respect to any goods or chattels that have or are to become attached to the land or any improvements thereon as fixtures, have been given or are outstanding that have not been fully performed and satisfied." (*Id.* Ex. 1 at 1). Speisman also represented in the Statement that "there have been no new improvements

---

[1] The amended complaint does not allege specifically that Speisman was the borrower. Ordinarily, a mortgage involving property in an Illinois land trust is executed by the trustee as holder of legal title, but the trustee is not the real obligor, and the holder either signs the note or guarantees payment. *See* David J. Lanciotti, *Land Trust Administration* §§ 8.1-8.2 (Ill. Inst. Cont. Legal Educ. 2009); *see also* Henry W. Kenoe, *Kenoe on Land Trusts* § 5.2 (Ill. Inst. Cont. Legal Educ. 1989).

made to the above referenced property since the last known survey of said property." (*Id.* Ex. 1 at 2).

These representations were false, and Speisman knew they were false when he made them. (*Id.* ¶¶ 7-8). On March 23, 2005, the land trust had contracted with Berliant Builders, Inc. for the construction of improvements to the property. (*Id.* ¶ 7; Ex. 2 at 1). Berliant had been constructing improvements to the property during the year before Speisman signed the Statement, was still doing so when he signed it, and continued to do work until February 14, 2007. (*Id.*).

Speisman signed the Statement to induce First America to issue a title insurance policy in connection with the closing on the Bank of America loan. (*Id.* ¶ 4). In reliance on Speisman's false representations in the Statement, First American issued its title policy. Although First American does not specifically allege as much, it appears Bank of America was a beneficiary of the policy. (*See id.* ¶¶ 11-12). In reliance on the representations, First American also disbursed the loan proceeds which it appears First American was holding in escrow. (*Id.* Ex. 1 at 2).

Speisman must not have paid for the improvements, because in June 2007 Berliant filed a mechanics lien against the property. (*Id.* ¶ 10; *see id.* Ex. 2). As the title insurer, First American provided Bank of America with a defense against Berliant's claim, incurring $13,496 in attorneys' fees. (*Id.* ¶¶ 11-12). First American ultimately settled the mechanics lien claim, paying Berliant $75,000. (*Id.* ¶ 11).

In October 2011, Speisman filed a chapter 7 bankruptcy case. First American then filed an adversary complaint asserting that Speisman owes First American a debt nondischargeable under section 523(a)(2)(A).[2] In 2013, First American amended its complaint. Speisman now

---

[2] The amended complaint does not mention section 523(a)(2)(A) and says the debt is nondischargeable under "section 523(c)." (Am. Compl. ¶ 3). But section 523(c)(1) does not

moves to dismiss the amended complaint on two grounds: (1) the amended complaint fails to plead fraud with particularity as Rule 9(b) requires, and (2) the amended complaint fails to allege that Speisman obtained money, property, services, or an extension, renewal, or refinancing of credit for purposes of section 523(a)(2)(A).

## 2. Discussion

The motion to dismiss will be denied. Although the allegations are a bit sparse, the amended complaint alleges enough information to satisfy Rule 9(b). The amended complaint also plainly states a claim under section 523(a)(2)(A).

### a. Rule 12(b)(6) and Rule 9(b) Standards

Under Rule 12(b)(6), a complaint will be dismissed unless it clears two "easy-to-clear hurdles." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must contain enough factual detail to give the defendant fair notice of the claim under Rule 8(a). "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Some facts must support each element of the claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *McCauley v. City of Chicago*, 671 F.3d 611, 616-17 (7th Cir. 2011); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010).

---

describe a basis for finding a debt nondischargeable. It declares that a debtor is discharged from a debt of the kind specified in section 523(a)(2), (4), or (6), unless a creditor requests a determination that the debt is nondischargeable and the court makes that determination. 11 U.S.C. § 523(c)(1). The provision's function, in other words, is to give the bankruptcy court exclusive jurisdiction over those kinds of nondischargeability claims. *Stoughton Lumber Co. v. Sveum (In re Sveum)*, Nos. 12-15483, 13-2, 2013 WL 3404097, at *4 (Bankr. W.D. Wis. July 8, 2013). The claim here is plainly one under section 523(a)(2)(A), and First American has requested a determination of nondischargeability. Since a plaintiff need not plead legal theories, *Del Marcelle v. Brown County Corp.*, 680 F.3d 887, 909 (7th Cir. 2012), it was unnecessary for First American to cite any provision of the Bankruptcy Code as the basis for its claim.

Second, a complaint must state a plausible claim – meaning the allegations must raise the plaintiff's right to relief above a "speculative level." *Twombly*, 550 U.S. at 555. The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotation omitted). To establish plausibility, a plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." *Swanson*, 614 F.3d at 404. That the allegations underlying the claim "'could be true is no longer enough to save it.'" *Estate of Miller ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 988 (7th Cir. 2012) (quoting *Atkins v. City of Chicago*, 631 F.3d 823, 831 (7th Cir. 2011)).

And when fraud is involved, Rule 9(b) requires more. Under Rule 9(b), a party "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Particularity means the who, what, when, where, and how: the first paragraph of any newspaper story." *Katz v. Household Int'l, Inc.*, 91 F.3d 1036, 1040 (7th Cir. 1996) (internal quotation omitted); *see also AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011). When representational fraud is alleged, the complaint must identify who made the misrepresentation; state the time, place and content of the misrepresentation; and describe how the misrepresentation was conveyed. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (citations and internal quotation omitted); *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006).

### b. Rule 9(b)

First American's amended complaint complies with Rule 9(b). The amended complaint identifies who made the misrepresentations (Speisman); states the time, place, and content of the

misrepresentations (on April 24, 2006, in connection with the closing on the Bank of America loan, Speisman represented that there were no outstanding contracts to furnish labor or materials relating to the property that had not been fully satisfied and that no improvements had been made to the property since the last known survey); and describes how the representations were made (in the Mortgagor Authorization and Agreement Statement that Speisman signed). If there is something Rule 9(b) requires that First American has not alleged, Speisman does not say what it might be.

Speisman's motion to dismiss the amended complaint under Rule 9(b) will be denied.

### c. Section 523(a)(2)(A)

His motion to dismiss the amended complaint under Rule 12(b)(6) will also be denied. The amended complaint alleges all the elements of a nondischargeability claim under section 523(a)(2)(A) based on a debt for money or property obtained by a false representation.

Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Although some courts have applied a single test for determining nondischargeability under section 523(a)(2)(A), that section actually describes three separate grounds for holding a debt to be nondischargeable: false pretenses, false representation, and actual fraud. *Dishman v. Julian (In re Julian)*, Nos. 12-7394-RLM-7, 12-50275, 2013 WL 625346, at *3 (Bankr. S.D. Ind. Feb. 20, 2013); *Wachovia Sec., LLC v. Jahelka (In re Jahelka)*, 442 B.R. 663, 668 (Bankr. N.D. Ill. 2010); *Bletnitsky v. Jairath (In re Jairath)*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001).

First American's claim here is based on false representations. To state a claim for false representation, a creditor must allege that the debtor owes the creditor a debt resulting from a false representation or omission of fact, a representation the debtor either knew was false or made with reckless disregard for its truth. *In re Davis*, 638 F.3d 549, 553 (7th Cir. 2011); *Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010); *Wallner v. Liebl (In re Liebl)*, 434 B.R. 529, 538 (Bankr. N.D. Ill. 2010); *Jahelka*, 442 B.R. at 668-69; *Deady v. Hanson (In re Hanson)*, 432 B.R. 758, 771 (Bankr. N.D. Ill. 2010), *aff'd*, 470 B.R. 808 (N.D. Ill. 2012). The creditor must also allege that the debtor made the representation with an intent to deceive and the creditor justifiably relied on the representation. *Ojeda*, 599 F.3d at 716-17.

Speisman does not dispute that First American has alleged the majority of these elements. His argument for dismissal rests on a single contention: that section 523(a)(2)(A) renders nondischargeable a debt for money or property (or services or credit) "obtained by" fraud, and First American has not alleged that he personally obtained any money or property.

This argument had little force before *Cohen v. de la Cruz*, 523 U.S. 213 (1998), and has even less force after it. Before *Cohen*, courts generally held that a debtor "did not have to obtain [money or] property . . . as long as the debtor received some benefit, even if the benefit received was small and indirect." 2 *Ginsberg & Martin on Bankruptcy* § 11.06[D] at 11-111 (Susan V. Kelley, ed., 5th ed. 2013); *see, e.g., In re Bilzerian*, 100 F.3d 886, 890 (11th Cir. 1996); *In re Arm*, 87 F.3d 1046, 1049 (9th Cir. 1996). In *Cohen*, however, the Court held that the "debt" for purposes of section 523(a)(2)(A) is not limited to the amounts obtained. Instead, "[o]nce it is established that specific money or property has been obtained by fraud . . . 'any debt' arising therefrom is excepted from discharge." *Cohen*, 523 U.S. at 218. Section 523(a)(2)(A), the Court

said, "bars the discharge of all liability arising from fraud . . . ." *Id.* at 222.

Since *Cohen*, courts have not required the debtor to have received any benefit, direct or indirect, for there to be a violation of section 523(a)(2)(A). *See In re Sabban*, 600 F.3d 1219, 1222 (9th Cir. 2010); *In re M.M. Winkler & Assocs.*, 239 F.3d 746, 749 (5th Cir. 2001); *Chenaille v. Palilla (In re Palilla)*, ___ B.R. ___, ___, 2013 WL 3327327, at *6 (Bankr. D. Colo. May 28, 2013); *Hawthorne Credit Union v. Quick (In re Quick)*, Nos. 09-B-9018, 09-A-738, 2012 WL 260050, at *2 (Bankr. N.D. Ill. Jan. 27, 2012); *Ludwig & Robinson, PLLC v. Yelverton (In re Yelverton)*, Nos. 09-414, 09-10023, 2009 WL 3857412, at *1 (Bankr. D.D.C. Nov. 17, 2009); *Marks v. Hentges (In re Hentges)*, 373 B.R. 709, 728-29 (Bankr. D. Okla. 2007); *but see Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 219-20 (4th Cir. 2007). As the court noted in *Winkler*, "[t]he statute focuses on the character of the debt, not . . . whether the debtor benefitted from the fraud." *Winkler*, 239 F.3d at 749.

It was unnecessary, then, for First American to allege that Speisman obtained money or property from his fraud or even that he benefitted directly or indirectly. Still, it may be worth noting that Speisman did benefit in at least two ways. First, he obtained the loan from Bank of America. As a condition for making a mortgage loan, lenders typically require borrowers to procure title insurance in connection with the property serving as collateral. *See* Barlow Burke, *Law of Title Insurance* § 1.01 (2012); 1 Joyce Palomar, *Title Insurance Law* § 4:29 (2012-13 ed.). Here, the Statement that Speisman signed specifically stated that the representations in it were made "as an inducement to disburse the loan which is the subject of this transaction." (Am. Compl. Ex. 1 at 2).

Second, Speisman obtained the title insurance policy itself and benefitted when First

American paid Speisman's debt to Berliant. In *In re Dallam*, 850 F.2d 446 (8th Cir. 1988), the court found a debt nondischargeable under circumstances essentially the same as those here. Dallam, the debtor, operated a business that built expensive houses. *Id.* Before one of the closings, she procured a title insurance policy with an affidavit stating that all persons furnishing labor, services, or materials in the construction of the house had been paid. *Id.* In reliance on the statement, the title insurer issued the policy. *Id.* Fifteen contractors then submitted claims to the purchasers, and the title insurer settled the claims. *Id.* When Dallam filed bankruptcy, the title insurer asserted that she owed it a debt nondischargeable under section 523(a)(2)(A). The bankruptcy court found otherwise, dismissing the complaint, and the district court agreed.

But the court of appeals did not. Reversing the dismissal, the court noted that Dallam's business had "benefited from the predicament in which it had placed Lawyers Title, since the amounts Lawyers Title paid extinguished Dallam Construction Company's liability for the same debts (which Dallam scheduled in her bankruptcy petition)." *Id.* at 449. That was enough, the court explained, to allege a nondischargeable debt under section 523(a)(2)(A): "Dallam obtained payment of her business' debts by knowingly making a false statement in order to induce Lawyers Title to rely on it, and Lawyers Title's reliance on the statement caused it to lose money." *Id.*; *see also Old Republic Title Co. of Tenn. v. Looney (In re Looney)*, Nos. 308-11453, 309-0088A, 2010 WL 3199618, at *3 (Bankr. M.D. Tenn. Aug. 6, 2010) (reaching the same conclusion under virtually identical facts). Just as Dallam defrauded Lawyers Title into paying her debts, Speisman is alleged to have defrauded First American into paying his.

Speisman's motion to dismiss the amended complaint for failure to state a claim under Rule 12(b)(6) will be denied.

### 3. Conclusion

For these reasons, the motion of defendant Albert Speisman to dismiss the amended complaint of plaintiff First American Title Insurance Company is denied. A separate order will be entered consistent with this opinion.

Dated: July 19, 2013

_____
A. Benjamin Goldgar
United States Bankruptcy Judge